IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CAUSE NO. EP-22-CR-229(2)-KC |
| | § | |
| (2) PAOLA CONNELLY | § | |

## ORDER

On this day, the Court considered Defendant Paola Connelly's Motion to Dismiss Count Two of the Indictment ("Motion"), ECF No. 143. For the following reasons, the Motion is **GRANTED**.

### I. BACKGROUND

#### A. Procedural History

Ms. Connelly was indicted together with her husband John Connelly on March 2, 2022. Indictment, ECF No. 18. A Superseding Indictment, ECF No. 44, followed, in which Ms. Connelly was charged in two counts with: Count One, being an unlawful user of a controlled substance in possession of firearms, in violation of 18 U.S.C. § 922(g)(3); and Count Two, knowingly disposing of firearms to an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(d)(3). *Id.* at 1–2.

Ms. Connelly moved to dismiss both counts on the grounds that both laws were unconstitutional, facially and as applied to her, under the Second and Fifth Amendments to the United States Constitution. Am. Mot. Dismiss 3 ("1st Mot. Dismiss"), ECF No. 65. The central thrust of the First Motion to Dismiss was that the charges did not survive constitutional scrutiny following *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). 1st Mot. Dismiss 1, 6. The Court originally denied the First Motion to Dismiss, Dec. 21, 2022, Order,

ECF No. 81, but then granted it on reconsideration, following the Fifth Circuit's first major post-*Bruen* decision in *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), *reversed and remanded*, 144 S. Ct. 1889 (2024). Apr. 6, 2023, Order 1–3, ECF No. 101. The Court dismissed both counts as unconstitutional under the Second Amendment. *Id.* at 25, 31.

The Government appealed. Notice Appeal, ECF No. 104. That appeal was pending for seventeen months, during which there were several key developments in Second Amendment law. *See Rahimi*, 144 S. Ct. 1889; *United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023), *vacated and remanded*, 144 S. Ct. 2707 (2024). With the benefit of these additional precedents, the Fifth Circuit affirmed in part and reversed in part this Court's April 6, 2023, Order. *United States v. Connelly*, 117 F.4th 269, 283 (5th Cir. 2024). The Fifth Circuit affirmed the dismissal of Count One, finding that § 922(g)(3) was unconstitutional as applied to Ms. Connelly. *Id.* But the Fifth Circuit reversed as to Count Two, finding that § 922(d)(3) was facially constitutional, and declining to consider whether it was constitutional as applied to Ms. Connelly. *Id.*

While the appeal was pending, Mr. Connelly, charged only in one count with a violation of § 922(g)(3), levied his own Second Amendment challenge. Mot. Dismiss Indictment ("Mr. Connelly's Mot."), ECF No. 128. The Court denied Mr. Connelly's Motion, finding that, under *Daniels*, there was a question of fact for trial as to whether § 922(g)(3) was constitutional when applied to the circumstances of his alleged offense. Apr. 2, 2024, Order 5, ECF No. 132. The Court has since dismissed the charges against Mr. Connelly without prejudice, at the Government's request. Oct. 8, 2024, Order, ECF No. 142.

Ms. Connelly now moves again to dismiss the only remaining charge in this case, which is her alleged violation of § 922(d)(3). Mot. 1. The Government filed a Response, ECF No. 148, to which Ms. Connelly filed a Reply, ECF No. 149.

**B.      Factual Allegations**

The following facts are taken from the Complaint, ECF No. 3, and the Government's Response. The Court expresses no opinion as to the veracity of the Government's allegations but assumes these facts to be true for the limited purpose of adjudicating this Motion.

On December 28, 2021, the El Paso Police Department ("EPPD") responded to an emergency call placed by the Connellys' neighbor. Compl. ¶¶ 5–7. When the police arrived, they heard several shots and observed Mr. Connelly standing at his neighbor's door with a shotgun. *Id.* ¶ 6. EPPD officers then arrested Mr. Connelly and conducted a protective sweep of the Connellys' house. *Id.* ¶¶ 6, 8–9. "[T]he house was in disarray with firearms, ammunition, and other weapons throughout the residence. The firearms and ammunition were not secured and found throughout the residence in common areas where both [Mr. and Ms. Connelly] had access." *Id.* ¶ 9. Law enforcement later "located and seized six firearms in the master bedroom and one in the living room." *Id.* ¶ 13. "There was a pistol located between the mattress and nightstand on what appeared to be [Ms. Connelly's] side of the bed . . . ." *Id.* "This pistol was a Glock, model 43x which was purchased by [Ms. Connelly under her maiden name] on December 11, 2020." *Id.* "The remaining firearms were spread throughout the master bedroom, mostly on her husband's side of [the] room, with the exception of one firearm which was locked in a safe in the master bedroom, to which [Ms. Connelly] advised she did not know the combination to [sic]."[1] *Id.* "[T]he firearm, a Mossberg 12-gauge shotgun, used by [Mr. Connelly] to fire rounds at their neighbor's door was purchased and owned by [Ms. Connelly]." Resp. 1.

---

[1] Officers also found controlled substances and drug paraphernalia in the home, and Ms. Connelly admitted that her husband had been using crack cocaine with their neighbor, and that she herself smokes marihuana in their home on a regular basis, in order to sleep. *Id.* ¶ 11.

3

**II.     DISCUSSION**

  **A.     Standard**

Federal Rule of Criminal Procedure 12 allows a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). These include motions that allege "a defect in the indictment," including "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). A court may rule on a pretrial motion to dismiss an indictment when the alleged infirmity "is essentially one of law." *United States v. Guthrie*, 720 F. App'x 199, 201 (5th Cir. 2018) (quoting *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011)).

  **B.     Analysis**

Ms. Connelly argues that the Government has failed to state an essential element of the § 922(d)(3) offense, because, even taking all alleged facts as true, there is nothing to indicate that Ms. Connelly "dispose[d] of any firearm or ammunition" to Mr. Connelly.[2] Mot. 4 (quoting 18 U.S.C. § 922(d)).

    **1.     The Court can address this argument at the Rule 12 stage.**

As a preliminary matter, the Government argues that "the motion to dismiss depends on . . . questions of fact; thus, pretrial resolution is inappropriate." Resp. 3. But Ms. Connelly's argument turns largely on a question of law—what it means to "dispose" of a firearm.[3] *See id.* Certainly, the Court cannot resolve factual disputes at the Rule 12 stage. *See Guthrie*, 720 F.

---

[2] The statute makes it "unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person . . . is an unlawful user of or addicted to any controlled substance." 18 U.S.C. § 922(d)(3).

[3] No other element of the offense is at issue. It is undisputed that the Government has adequately alleged Ms. Connelly knew her husband was an unlawful user of controlled substances at the time he came to possess her shotgun. *See* Compl. ¶ 11. And it is also undisputed that the Government does not allege that Ms. Connelly sold the firearm to her husband.

App'x at 201. But challenges to the sufficiency of an indictment may be amenable to pretrial resolution even when they require some application of law to facts, so long as they do not require the Court to usurp the jury's function by resolving factual disputes. *Connelly*, 117 F.4th at 282 (upholding this Court's as-applied dismissal of Count One of Ms. Connelly's Superseding Indictment, because "there is no evidence that she was intoxicated at the time she was arrested"); *Guthrie*, 720 F. App'x at 201. Therefore, after ascertaining the definition of "dispose of," the Court takes all of the Government's factual allegations as true for purposes of applying that legal standard to determine whether an offense has been adequately charged here.

### 2. To "dispose of" requires an active step to transfer a firearm.

Neither party references any Fifth Circuit decisions considering the scope of "sell or otherwise dispose of" in § 922(d). *See generally* Mot.; Resp.; Reply. The Government does, however, reference the Fifth Circuit's Pattern Jury Instructions for Criminal Cases. Resp. 2. In the Committee's Note to the pattern charge for § 922(d), it states:

> "Otherwise dispose of" means "to transfer a firearm so that the transferee acquires possession of the firearm." *United States v. Jefferson*, 334 F.3d 670, 674–75 (7th Cir. 2003); *see United States v. Monteleone*, 77 F.3d 1086, 1092 (8th Cir. 1996) (holding that "disposal of" occurs when a transferee "comes into possession, control, or power of disposal of a firearm"); *United States v. Lopez*, 2 F.3d 1342, 1354 (5th Cir. 1993) (explaining in dicta in a case involving a charge pursuant to 18 U.S.C. § 922(q) that § 922(d) "deals with transfers, not mere possession" of firearms), *aff'd on other grounds*, 115 S. Ct. 1624 (1995).

Pattern Jury Instructions (Criminal Cases), Committee Note to § 2.43C (5th Cir. 2024).

The Government argues that under these standards, a jury could convict Ms. Connelly of a § 922(d)(3) violation if they found that she owned the Mossberg shotgun and passively allowed her husband to come into possession and control of it. Resp. 2–3. The Government also relies on *United States v. Stegmeier*, in which the Eighth Circuit stated that "a recipient's possession is

5

sufficient proof that a defendant disposed of a firearm."[4] 701 F.3d 574, 579–80 (8th Cir. 2012). Possession can mean either "control over the place where the firearm was located, or control, ownership, or dominion of the firearm itself." *Id.* at 580 (quoting *United States v. Perez*, 663 F.3d 387, 391 (8th Cir. 2011)).

      Reading these passages in isolation, one might conclude that criminal liability under § 922(d) attaches whenever a gun owner's weapon is found with a prohibited person or in a place to which that person has access. But in *Stegmeier* itself, there was additional evidence to support finding that the defendant disposed of the weapon. The *Stegmeier* defendant gave a prohibited person—a felon and a fugitive—full, exclusive control of his RV for three months, and when he gave him a tour of the RV, he "told him there was a handgun in the closet," saying "nothing about his permission (or lack thereof) to touch or use the firearm." *Id.* at 577, 580. These additional facts about the defendant's conduct, above and beyond the prohibited person's mere possession of the defendant's weapon, were essential to the *Stegmeier* court's decision to uphold the conviction. *Id.* at 580. The court used those facts to avoid reaching an argument that under an expansive construction of "dispose of," "hosts [could be] guilty of providing a firearm to a prohibited person by inviting them into a home that has a gun." *Id.* The Eighth Circuit acknowledged that "host liability" raised the specter of an intrusion into the host's Second Amendment rights to keep arms in their home, but did not consider the constitutional issue in any depth, finding that "the facts of [that] case [did] not present the issue." *Id.*

      Thus, despite the broad language quoted by the Government, the *Stegmeier* decision itself acknowledges that something more than mere possession of the defendant's gun by a prohibited person is likely required. The two out-of-circuit decisions referenced in the Pattern Jury

---

[4] The Government misattributes this quotation to *Jefferson*. Resp. 2–3.

Instructions also involved some active step by the defendant to transfer possession of the firearm from himself to the prohibited person. *Jefferson*, 334 F.3d at 672 (defendant gave gun to his brother to keep temporarily while defendant went out of town); *Monteleone*, 77 F.3d at 1088 (defendant gave gun to his half-brother who had offered to get it repaired for him). In sum, the cases cited by the Government do not stand for so broad a reading of "dispose of" as the Government contends.

And even if the Court were to assume that they do, the Sixth Circuit has explicitly held otherwise: "[E]vidence of [the prohibited person's] possession of the gun cannot suffice to establish [the defendant's] disposition of it." *United States v. Washington*, 166 F. App'x 823, 831 (6th Cir. 2006). Again, for the reasons discussed above, there does not appear to be a meaningful disagreement among the Circuits on this issue. But to the extent there is a conflict between *Stegmeier* and *Washington*, neither is controlling and the Court finds *Washington* more persuasive for at least four reasons.

First, the plain meaning of "dispose" would appear to require at least some action on the part of the one doing the disposing. *See Jefferson*, 334 F.3d at 674 (quoting a dictionary definition of disposal as "to transfer to the control of another; to get rid of; to deal with conclusively" (emphasis omitted)). Second, while the legislative history may indicate that Congress intended to prohibit "both temporary and permanent" and "both commercial and noncommercial" dispositions, the parties have not referenced, and the Court has not found any indication that the legislature intended to punish people who passively allow their firearms to be acquired by prohibited persons. *See id.* at 674–75 (discussing legislative history of § 922(d)). Third, requiring that the defendant take some action in order to "dispose of" a firearm better accords with Fifth Circuit dicta that § 922(d) "deals with" more than "mere possession." *See*

*Lopez*, 2 F.3d at 1354. Finally, the Government's proposed construction would have puzzling implications. If "a recipient's possession is sufficient," 701 F.3d at 579, in all cases to establish disposition, then a gun owner could be convicted even if their firearm were forcibly stolen from them by a person that they knew or reasonably should have known to be prohibited from possessing it. One category of prohibited persons is those subject to domestic violence restraining orders. 18 U.S.C. § 922(d)(8). It is unlikely that Congress intended the courts to construe "dispose of" in a way that would make a survivor of domestic violence guilty of a felony if their abuser robbed them of a weapon. One would expect such a startling and unusual policy decision to be stated more clearly.[5]

In sum, the Court finds that in order to dispose of a firearm to a prohibited person within the meaning of § 922(d)(3), a defendant must take at least some active step to transfer that firearm to that person.

### 3. There is no indication that Ms. Connelly disposed of a firearm.

Applying this standard here, as the Fifth Circuit noted when this matter went up on appeal, "[t]he record is unclear as to what offensive conduct [Ms. Connelly] undertook that merited her being charged under § 922(d)(3)." *Connelly*, 117 F.4th at 273 n.1. The Government characterizes Ms. Connelly's offense conduct as "allow[ing] her husband, the recipient, to come into possession and control of [her] firearms." Resp. 2. Ms. Connelly claims that "she was asleep in her bed" when Mr. Connelly took the firearm. Mot. 5. The Government does not concede that Ms. Connelly was asleep, *see generally* Compl.; Resp., and the Court cannot make

---

[5] Even if the meaning of "dispose" were ambiguous, the rule of lenity would require the Court to adopt the interpretation that narrows the grounds for criminal liability. *Cargill v. Garland*, 57 F.4th 447, 471 (5th Cir. 2023) ("[A]ssuming *arguendo* that the statute is ambiguous, we conclude that the rule of lenity demands that we resolve that ambiguity in favor of [the defendant].").

findings of fact at this stage.  *See Guthrie*, 720 F. App'x at 201.  But even assuming she was awake, there is no allegation or evidence that Ms. Connelly took any active step to transfer any of her firearms to Mr. Connelly.  At most, the allegations are that she left her guns lying about in "disarray" in the home that they shared and did not take steps to prevent him from taking them.  Compl. ¶ 9.

Two Sixth Circuit decisions involve romantic partners, one of whom was charged under § 922(d) with disposing of a gun to the other.  In *United States v. Saine*, the Sixth Circuit affirmed the conviction.  No. 23-5426, 2024 WL 3508691, at *7 (6th Cir. July 23, 2024).  There, as here, [the defendant] kept the guns in the home that she shared with [her husband, the prohibited person,] where he could readily access them."  *Id.* at *4.  But the *Saine* defendant did much more than that.  She was shown on a surveillance video walking around with her husband in a gun store and examining firearms with him.  *Id.* at *1.  The two "[took] turns handling the weapons, with [her husband] testing their weight and grip.  At checkout, [the defendant] completed paperwork, a required ATF Form 4473, which allows the seller to do a background check."  *Id.*  But when they left the store, her husband was "carrying the guns."  *Id.*  The defendant later texted her husband, saying "I've got your gun and stuff in the house."  *Id.*

In *Washington*, the Sixth Circuit vacated the defendant's § 922(d)(1) conviction, for disposing of a firearm to her boyfriend, a convicted felon.  166 F. App'x at 830–31.  There, the defendant owned a gun, which she sometimes carried with her when in the presence of her boyfriend.  *Id.* at 828.  The defendant "never locked the gun or otherwise made it inaccessible" to her boyfriend.  *Id.*  Sometimes, he noticed it in her car "and asked her to move it, which she did."  *Id.* at 831.  But while she "had the gun in [her boyfriend's] presence," she never "gave the gun to

9

him, left it in his presence while she was absent, or countenanced his possession of the weapon." *Id.*

Of all the cases discussed in this Order, *Washington* is the most like Ms. Connelly's. In all four of the other cases, in which the convictions were upheld, the defendants took an active step to transfer the firearms to the prohibited persons. In *Saine,* the defendant essentially conducted a straw purchase for her husband. 2024 WL 3508691, at *1. In *Jefferson* and *Monteleone*, the defendants temporarily gave the weapons to their brothers for repair or safekeeping. *Jefferson*, 334 F.3d at 672; *Monteleone*, 77 F.3d at 1088. And in *Stegmeier*, the defendant left the prohibited person alone in his RV trailer for three months, after telling him there was a handgun in the closet. 701 F.3d at 577, 580.

Certainly, by leaving guns lying about her home in "disarray," Compl. ¶ 9, Ms. Connelly was not as diligent as the *Washington* defendant in safeguarding her firearms. *See Washington*, 166 F. App'x at 831 ("[W]hile she did not lock up the gun, she did not leave it unattended or accessible to [her boyfriend] when she was not present."). But just like the defendant in *Washington*, and unlike the defendants in the other cases, there is nothing to suggest that Ms. Connelly gave a gun to Mr. Connelly or left a gun in his exclusive control and told him where to find it, *Stegmeier*, 701 F.3d at 577. Critically, in *Washington*, the court acknowledged that the evidence "permit[ted] an inference that [the defendant] took no steps to prevent [her boyfriend] from having access to her gun." 166 F. App'x at 831. So too here, where the Government has alleged that Ms. Connelly failed to prevent Mr. Connelly from accessing the firearms that she openly stored in their home. But failing to prevent access to something is a far cry from "dispos[ing] of" it "under any reasonable construction of those words." *Id.* Accordingly, the

10

Court finds that Count Two of the Superseding Indictment against Ms. Connelly fails to state the "dispose of" element of a § 922(d) offense, rendering it deficient.[6]

### III.   CONCLUSION

For the foregoing reasons, the Motion, ECF No. 143, is **GRANTED**.  The Court **ORDERS** that the offense charged in Count Two of the Superseding Indictment is **DISMISSED**.

**SO ORDERED.**

SIGNED this 1st day of November, 2024.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE

---

[6] Ms. Connelly also argues that because Texas is a community property state, she and her husband both owned the firearms at issue from the day they were purchased, and thus, there was no transfer. Reply 1. The Court need not reach this argument.